# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

BOBBIE CALDWELL, o/b/o )
A.C., a minor child, )
                                                  Plaintiff, )
)
v. )   Civil Action No. 7:16-CV-135
)
NANCY A. BERRYHILL, Acting )
Commissioner of Social Security,[1] )
)
                                                  Defendant. )

## REPORT AND RECOMMENDATION

Plaintiff Bobbie Caldwell ("Caldwell"), on behalf of A.C., a minor child, filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding A.C. not disabled and therefore ineligible for Supplemental Security Income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Caldwell alleges that the Administrative Law Judge ("ALJ") erred by finding that A.C. does not suffer from a severe impairment that functionally equals a listed condition. I conclude that the ALJ's decision is not supported by substantial evidence. Accordingly, I **RECOMMEND GRANTING in part** Caldwell's Motion for Summary Judgment (Dkt. No. 14), **DENYING** the Commissioner's Motion for Summary Judgment (Dkt. No. 16), and **REMANDING** this case for further administrative proceedings consistent with this opinion.

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to

---

[1] Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the defendant in this suit.

1

support the Commissioner's conclusion that A.C. was not disabled under the Act.[2] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

However, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that the ALJ must "build an accurate and logical bridge from the evidence to his conclusion" and holding that remand was appropriate when the ALJ failed to make "specific findings" about whether the claimant's limitations would cause him to experience his claimed symptoms during work and if so, how often) (citation omitted).

## CLAIM HISTORY

Caldwell, on behalf of A.C., protectively filed for SSI on February 28, 2012, claiming that A.C.'s disability began on September 15, 2011 due to epilepsy and an attention deficit-hyperactivity disorder ("ADHD").[3] R. 14, 62, 149. At the time Caldwell filed for SSI, A.C. was 9 years old, and at the time of the ALJ's decision, A.C. was 12 years old. R. 17, 26.

---

[2] Under the Act, a claimant under the age of eighteen is considered "disabled" for purposes of eligibility for SSI payments if he has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i).

[3] The relevant period begins on February 28, 2012, as SSI benefits are not payable for any period prior to the filing of an application. See 20 C.F.R. §§ 416.202, 416.501.

The state agency denied Caldwell's application at the initial and reconsideration levels of administrative review. R. 87–94, 95–97. On January 16, 2014, ALJ Jeffrey J. Schueler held a hearing to consider Caldwell's disability claim on behalf of A.C. R. 31–61. Counsel represented A.C. at the hearing, which included testimony from Caldwell, who is A.C.'s father. Id.

The Social Security regulations provide a three-step sequential evaluation process for determining whether a minor is disabled. 20 C.F.R. § 416.924. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity; if so, the claimant is not disabled. Id. § 416.924(a),(b). Next, the ALJ must determine whether the claimant suffers from "an impairment or combination of impairments that is severe," if not, the claimant is not disabled. Id. § 416.924(a),(c). To qualify as a severe impairment, it must cause more than a minimal effect on the claimant's ability to function. Id. § 416.924(c). If an impairment is "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations," then it is not severe. Id. If the claimant has a severe impairment, the analysis progresses to step three where the ALJ must consider whether the claimant's impairment or combination of impairments meets, medically equals, or functionally equals a listing. Id. § 416.924(a),(d). If the claimant has such impairment, and it meets the duration requirement, the claimant is disabled. Id.

On July 8, 2014, the ALJ entered his decision, finding that A.C. had not engaged in substantial activity and that he suffered from the severe impairments of seizure disorder and Attention Deficit Hyperactivity Disorder ("ADHD"). R. 17. The ALJ concluded at step three that A.C.'s severe impairments or combination of impairments did not meet or medically equal the severity of one of the listed impairments. R. 17; see 20 C.F.R. § 416.924.

When conducting this Step Three analysis, the ALJ must consider the six relevant domains[4] of functioning to determine whether a severe impairment functionally equals a listed condition: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). In order for a claimant to be found disabled, marked limitations must be assessed in at least two domains or an extreme limitation assessed in one domain. Id. § 416.926a(a). "Marked" limitation is defined as "more than moderate" but "less than extreme." Id. § 416.926a(e)(2)(i) A minor has a "marked" limitation in a domain when his impairment(s) interferes seriously with his ability to independently initiate, sustain, or complete activities. Id. Extreme limitation is defined as "more than marked." Id. § 416.926a(e)(3)(i). While extreme limitation is the rating given to the worst limitations, it does not necessarily require a total lack or loss of ability to function. Id.

Here, the ALJ, after considering the six functional domains, concluded that A.C.'s severe impairments, neither individually nor in combination, were functionally equivalent to a listed condition. R. 19–26. Specifically, the ALJ concluded that A.C. had "less than marked limitation[s]" in the domains of health and physical well-being and interacting and relating with others. R. 20–26. Importantly, however, the ALJ found that A.C. does not have an impairment or combination of impairments that result in either "marked" limitations in two domains of functioning or an "extreme" limitation in one domain of functioning. Id. Thus, the ALJ concluded that A.C. was not disabled. Caldwell appealed the ALJ's decision, and on January 31, 2016, the Appeals Council denied his request for review. R. 1–6. This appeal followed.

---

[4] The domains "are broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1).

## ANALYSIS

Caldwell challenges the ALJ's determination that A.C. has no limitations in attending and completing tasks and "less than marked limitations" in interacting and relating with others. R. 21–23.

### Attending and Completing Tasks

In the domain of attending and completing tasks, the Commissioner considers how well the child is able to focus and maintain attention and how well he is able to begin, carry through and finish activities, including the child's pace at which he performs activities and the ease with which he changes activities. See 20 C.F.R. § 416.962a(h). The Social Security Administration ("SSA") indicates that a school-age child without impairment should be able to focus his attention in order to "follow directions, remember and organize [] school materials" and complete assignments. Id. § 416.926a(h)(2)(iv). The child should be able to "concentrate on details", "not make careless mistakes", "stay on task", and be able to participate in group sports and complete chores. Id. The SSA indicates that an adolescent without impairment should be able to "pay attention to increasingly longer presentations and discussions", maintain his concentration while reading textbooks, and independently plan and complete long-range academic projects. See Id. § 416.926a(h)(2)(v); SSR 09-4p.

The ALJ's discussion of this domain consists of three paragraphs explaining the standards for analyzing the evidence to determine whether a limitation exists in this area. R. 21–22. The ALJ then analyzed the evidence in only four sentences, finding that A.C. had no limitation in this domain. R. 22. Specifically, the ALJ considered how A.C.'s fourth grade teacher reported problems in this area (R. 314), but then the ALJ determined that "subsequent records show that [A.C.] had no problems paying attention and completing his school work". R. 22. The ALJ

5

relied upon reports from A.C.'s fifth grade teacher that A.C. had no problems in the area of attending and completing tasks when reaching this conclusion. R. 22. Indeed, A.C.'s fifth grade teacher stated A.C. functions as well as any other student. R. 332. The evidence also shows though that a middle school teacher reported A.C. often came to class unprepared, and so the teacher asked another student to help A.C. remain on task. R. 22, 336. This teacher reported as well that A.C. had little to no problem in carrying out single-step instructions, waiting to take turns, changing from one activity to another without being disruptive, and working without distracting others. R. 336. The same middle school teacher noted that A.C. had obvious to serious problems in paying attention when spoken to directly, focusing long enough to finish the assigned task, carrying out multi-step instructions, completing class homework assignments, organization, finishing work on time and completing work accurately without careless mistakes. Id.

In terms of treatment records, on February 14, 2012, Blue Ridge Behavioral Healthcare noted that A.C.'s teacher's report showed that he had hyperactive behavior and attention problems, and Caldwell reported A.C. continued to show decline in academic functioning. R. 374. Eight days later though, on February 22, 2012, A.C. reported he was able to pay better attention in school, and Caldwell reported his son's behavior in school showed some improvement. R. 378. In October of 2013, progress notes from Blue Ridge Behavioral Health document that A.C.'s grades dramatically improved and A.C. reported doing his homework with little prompting. R. 575. Caldwell also reported that A.C. was staying on task. R. 576. In March of 2013, Blue Ridge Behavioral Healthcare documents indicate that A.C. continued to struggle with his homework, but otherwise he behaved in school and was "doing good." R. 510.

State agency psychologist Jeanne Buyck, Ph.D., reviewed A.C.'s record and found that he had marked restrictions in his ability to attend and complete tasks. R. 67. Dr. Buyck referenced A.C.'s teacher's report showing serious problems in this domain, but noted A.C. had become better organized after initiation of medication. Id. Joseph Duckwell, M.D., did not find A.C. had any limitations in this domain. Id. At the reconsideration level of review, state agency psychologist, Joseph Leizer, Ph.D., and state agency pediatrician, Leslie Ellwood, M.D., found no limitation in A.C.'s capacity to attend and complete tasks. R. 78. Dr. Leizer stated that while the teacher's questionnaire dated March 20, 2012 "indicated significant limitations in this domain…a subsequent report of 10/5/12 [ ] reflects significant improvement and no limitations are noted." Id.

I cannot conclude that substantial evidence supports the ALJ's determination that A.C. suffers from "no limitation" in the domain of attending and completing tasks. In February 2014, A.C. had difficulty completing work on time, focusing long enough to finish his assigned task and carrying out multi-step instructions. R. 336. Dr. Buyck found that A.C. had marked restrictions in this domain (R. 67), but the ALJ does not address her opinion at all. In fact, the ALJ failed to address the weight he gave to any of the opinion evidence. Consequently, I find the ALJ's decision legally deficient on this point. See Monroe v. Colvin, 826 F.3d 176, 191 (4th Cir. 2016) (holding that conclusory analysis of medical opinions and nonspecific explanation of weight assigned to each opinion precludes meaningful judicial review); Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Hickman ex rel. M.A.H. v. Astrue, 728 F. Supp. 2d 168, 181 (N.D.N.Y. 2010) (finding that "the record contains evidence that [claimant] needs extra time to complete math concepts, needs directions to be simplified and

7

explained, has difficulty completing writing and math assignments and must have her testing administered in a location with minimal distractions. Accordingly, the Court cannot conclude that the ALJ's determination that [claimant] suffers from 'no limitation' in this domain is supported by substantial evidence."). The ALJ has a duty to explain how he reached his conclusions, and he fails to do so in A.C.'s case.

### Interacting and Relating with Others

This domain concerns a child's ability to "initiate and sustain emotional connections with others, develop and use the language of the community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possession of others." 20 C.F.R. § 416.926a(i); SSR 09-5P. The SSA indicates that a school-age child without impairment should be able to "develop more lasting friendships with other children of the same age", "understand how to work in groups", and have an "increasing ability to understand another's point of view and to tolerate differences." Id. § 416.926a(i)(2)(iv). The SSA indicates that an adolescent without impairment should be able to initiate and develop friendships with children of the same age and to "relate appropriately to other children and adults, both individually and in groups." Id. § 416.926a(i)(2)(v). Some examples of limitations in this domain include the claimant having "no close friends"; avoiding or withdrawing from people he knows or being "overly anxious or fearful of meeting new people"; "difficulty playing games or sports with rules"; "difficulty communicating with others"; and "difficulty speaking intelligibly or with adequate fluency." Id. § 416.926a(i)(3).

When assessing this domain, the ALJ stated that A.C.'s "fourth grade teacher reported problems in this area (Exhibit 11E), but subsequent records show that his behavior has improved with medication and therapy." R. 23. The ALJ cites A.C.'s fifth grade teacher's report

8

documenting that A.C. had no problems in this area and functioned as well as every other student. R. 23, R. 332. The ALJ then concluded: "[i]n treatment records dated October 3, 2013, the claimant's father reported that he was behaving in school, and doing his homework (Exhibit 10F). His teacher from middle school reported no problems in this area (Exhibit 13E)." R. 23.

The ALJ failed to address conflicting reports from Blue Ridge Behavioral Healthcare and Caldwell that A.C. experiences outbursts of anger and defiant behavior, behavior which causes problems at school and at home. R. 366, 370, 374, 413, 453, 481, 509. For example, a note from Blue Ridge Behavioral Healthcare dated April 11, 2012 states: "[A.C.] has anger outburst everyday triggered by stress at home and at school specifically by interpersonal relationships. [A.C.] has hit peers, hit his siblings, yelled, thrown things, been kicked off his bus at school due to not following directions, and has threatened to kill others when angry." R. 413. Another Blue Ridge Behavioral Healthcare note from April 2012 states: "[A.C.] has had homicidal ideation towards his siblings especially his brother on a weekly basis. [A.C.] was recently kicked off his school bus for threatening to kill another student. [A.C.]'s behavior has gotten worse as he has gotten older. [A.C.] has assaulted peers and siblings numerous times for 'annoying him.'" R. 409.

The ALJ failed to address how the medical evidence impacted his assessment of this domain. The treatment records from Blue Ridge Behavioral Healthcare contain significant information relevant to A.C.'s ability to interact and relate to others. The ALJ does not explain in his opinion why he discounted the medical evidence from Blue Ridge Behavioral Healthcare. As such, I cannot find that the Commissioner's final decision is supported by substantial evidence absent greater analysis of how A.C.'s treatment records impact the assessment of this domain. See Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary"

9

because the court is "left to guess [at] how the ALJ arrived at his conclusions"); see also Werner v. Colvin, No. 5:15-CV-22, 2016 WL 5349803, at *9–10 (W.D. Va. Sept. 23, 2016).

Remand is warranted because I cannot find that substantial evidence supports the ALJ's findings as to these two domains without greater analysis by the ALJ. On remand, the ALJ should analyze all medical opinions and other relevant evidence and explain how it affects his assessments of the domains.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Caldwell's motion for summary judgment be **GRANTED in part**, the Commissioner's motion for summary judgment be **DENIED,** and that the case be **REMANDED** for further consideration by the ALJ.

The Clerk is directed to transmit the record in this case to Michael F. Urbanski, United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation which must be filed within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered: June 14, 2017

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge